UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GARY L. SMITH, | CASE NO. 1:10CV1368 |
| Plaintiff, | |
| | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION & ORDER** |
| Defendant. | |

Gary L. Smith ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the Court AFFIRMS the Commissioner's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice:

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on October 20, 2003 and filed an application for DIB on November 4, 2003, alleging an onset date of May 1, 2003 in both applications. Tr. at 57, 395-396. The SSA denied the applications initially and on reconsideration. *Id*. at 44-54, 400-409.

Plaintiff thereafter requested a hearing before an Administrative Law Judge ("ALJ") and the hearing was held on August 7, 2007. Tr. at 414. At the hearing, the ALJ received testimony from Plaintiff, who was not represented by counsel, Dr. Jonathan Nusbaum, a medical expert ("ME"), and Barry Brown, a vocational expert ("VE"). Tr. at 414..

On August 28, 2007, the ALJ issued a Notice of Decision – Unfavorable, finding that Plaintiff was not disabled. Tr. at 34. Plaintiff requested review of the ALJ's decision by the

Appeals Council, but the Appeals Council denied the request for review. *Id*. at 2-12.

On June 18, 2010, Plaintiff filed the instant suit and Defendant thereafter filed an answer. ECF Dkt. #s 1, 12. On December 23, 2010, Plaintiff filed a brief on the merits, and on March 22, 2011, Defendant filed a brief on the merits. ECF Dkt. #s 15, 19. On April 4, 2011, Plaintiff filed a reply brief. ECF Dkt. #20.

**II.**     **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

In his decision, the ALJ found that Plaintiff suffered from alcoholic hepatitis, alcohol abuse, bipolar disorder, depression, personality disorder and borderline intellectual functioning ("BIF"), which qualified as severe impairments under 20 C.F.R. §416.920(c). Tr. at 19. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id*. at 26.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, which included the following limitations: lifting, carrying, pushing and pulling up to twenty pounds occasionally and ten pounds frequently; siting and standing and/or walking for up to six hours per workday; occasional stooping; simple, one to two-step instructional work, with no strict deadlines or production quotas, the demonstration of work tasks rather than written instructions, no frequent changes in the work place and dealing with co-workers and supervisors only on a superficial level. Tr. at 27. The ALJ determined that Plaintiff had no past relevant work and he had a limited education. *Id*. at 32.

Based on the record and the VE's testimony, the ALJ determined that Plaintiff had the RFC to work in jobs existing in significant numbers in the national economy, such as a machine operator, inspector and cleaner. Tr. at 33.

**III.**     **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB and SSI. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.   STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a

-3-

preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health & uman Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.  ANALYSIS

Before addressing Plaintiff's assertions of error, the Court considers an issue only briefly touched upon by Plaintiff and not addressed at all by Defendant: Plaintiff's appearance at the hearing before the ALJ without representation.

A review of the transcript of the hearing before the ALJ shows that the ALJ did not inform Plaintiff of his right to have representation at the hearing and did not obtain a waiver of the right to representation:

| | |
|---|---|
| ALJ: | Now, Mr. Smith, you went over the exhibit list, and these are the documents that you sent me to review? |
| RPTR: | That was the list out there that I gave you guys. I think your wife saw it. |
| ALJ: | Okay. Do you have any objection to my admitting any of those documents? |
| CLMT: | She explained something to me, and hang on there. Right now she mentioned something about, what do you call that, a contingency to wait longer for the hearing because - - |
| ALJ: | Mr. Smith, this is over a year. This is three years old. This hearing has been dragged out way too long. You had more than ample time to get another Counsel if you wanted to. I see no reason to grant you a continuance. |
| CLMT: | I started in at another rehabilitation center, and this lady said something about helping me with this, and I didn't know anything about this place until I was told about it. So I just got into that, and they are working with me, and from what I understood was she would help me with this. I don't know. It is some kind of a mental doctor, or whatever it is, you know, to help me understand or to get through this. |
| ALJ: | Are you talking about it is some type of - - this is not a doctor, right? |
| CLMT: | What do they call them? A psychologist, or somebody that helps you deal with your mental aspects of life. |
| ALJ: | You mean you are going to be going for counseling. Is that what you mean? |

| | |
|---|---|
| CLMT: | Well, that and she is trying to help me get on track. She is setting me up with another doctor and stuff. |
| ALJ: | That's not the same thing as a representative, sir. |
| CLMT: | But she is - - |
| ALJ: | And that is not a valid reason for me to continue the hearing. |
| CLMT: | But she said that she could help me with my Social Security, and see I was trying to seek something like that and I just didn't know the right avenues, and she is trying to help me. |
| ALJ: | You were represented by John Ressler (Phonetic), an attorney. |
| CLMT: | Uh-huh. |
| ALJ: | I know Mr. Ressler. I'm sure he explained to you how the situation works. When he withdrew in October of 2006, you had more than ample opportunity to get someone else to assist you at that time. Again, I see no reason to grant your request. |
| CLMT: | I guess I just didn't understand totally, and that was why this lady is trying to help me and my wife get this together. |
| ALJ: | If[sic] lady is - - then why isn't she here today? |
| CLMT: | She is at that place at the rehab center. |
| ALJ: | Did you ask her to represent you? |
| CLMT: | No. I did not. I guess I just didn't understand, sir. I'm sorry. |
| ALJ: | Okay. You gave me - - there is a lot of documentation in your record, and it takes me all the way through to at least through 2006. That's quite substantial on it. Do you have some additional records you wanted to offer me? |
| CLMT: | Well, I'm in another ninety day evaluation at this place to determine what I can do or what I can't do, and that was what I was trying to get through, which was what I guess she said that she was going to help me with because, just, I guess, from my interviews. |
| ALJ: | Okay. Is this lady some type of a social worker? |
| CLMT: | Yeah. A social worker. And they are supposed to be helping me get, what did they call that, somebody to help me deal with my functions to get me here and there to my appointments and stuff. |
| ALJ: | Okay. I see what you are saying. That is not a valid reason for me to grant your request. We're going to go ahead with the hearing today. You can send me any further documentation you desire on it, and as long as I have not rendered my decision in a written form and signed it, I will consider it. Okay? And that is what this lady, or whoever she is, should be helping you with. |

| | |
|---|---|
| CLMT: | That's the - - |
| ALJ: | Do you understand, sir? |
| CLMT: | I think so. Yes. |
| ALJ: | Okay. So that is what I'm going to do. I see no reason to grant a formal continuance because you have had more than enough opportunity to get representation, and you knew about representations because you were represented at one time by an attorney. And having said that, we are going to go forward with the hearing today. |

Tr. at 417-420. Further, the following colloquy occurred as to Plaintiff's questioning of the ME after the ALJ questioned the ME regarding Plaintiff's physical impairments:

| | |
|---|---|
| ALJ: | Mr. Smith? |
| CLMT: | Yeah. |
| ALJ: | Do you want to ask the doctor any questions? |
| CLMT: | I have one. |
| ALJ: | Okay. |

EXAMINATION OF MEDICAL EXPERT BY CLAIMANT:

| | |
|---|---|
| Q: | I've had two hernia surgeries on the lower right side and it has been quite a long time. Is there any reason for like if you touch it at all for it to hurt real bad, and then occasionally to start hurting again after two surgeries? |
| A: | Well, without examining you I can't answer that question. |
| Q: | Okay. |

Tr. at 450-451. That was the only question that Plaintiff asked the ME. Moreover, after the ALJ presented his hypothetical question to the VE and received information relating to Plaintiff's past relevant work, the ALJ asked Plaintiff:

| | |
|---|---|
| ALJ: | Okay. Mr. Smith? |
| CLMT: | Yes, sir. |
| ALJ: | Would you like to ask Mr. Brown some questions? |
| CLMT: | No. I just - |
| ALJ: | No? |
| CLMT: | I didn't understand it. So - - |

| | | |
|---|---|---|
| ALJ: | | That's okay.  Now do you want to add anything before I adjourn the hearing? |
| CLMT: | | Not that I can think of.  I mean, other than - - |
| ALJ: | | Okay.  I'm going to - - go on. |
| CLMT: | | Other than I don't know if I understood you earlier or not about being able to, before you conclude your interview or what, you know, before you - - |
| ALJ: | | Okay.  What I am going to do, sir, is I am going to hold the record open for you. |

*Id.* at 456.  No further dialogue or explanation was had regarding the VE or his testimony.

In his decision denying Plaintiff DIB and SSI, the ALJ stated:

> Although informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative.

*Id*. at 16.  The ALJ footnoted this statement and added:

> Jon Ressler, Attorney-at-Law, previously represented the claimant until October 2006 when he withdrew from the case.  Although the claimant indicated at the hearing that he wanted a friend to represent him, he wasn't sure of whom that person would be and was clearly capable of proceeding to the hearing.  He had sufficient time from the time Mr. Ressler withdrew from the case to obtain another attorney or some other non-attorney representative.

*Id*. at 16, fn. 1.

While the claimant has the ultimate burden of proving by sufficient evidence that he is entitled to disability benefits, 42 U.S.C.A. § 423(d)(5), an ALJ has a heightened duty to develop the record under special circumstances, such as when a claimant is not represented, is not capable of presenting an effective case, and is unfamiliar with hearing procedures.  *Nabours v. Comm'r of Soc. Sec*., 50 Fed.Appx. 272, 275, 2002 WL 31473794 (6th Cir. 2002), unpublished, citing *Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 856 (6th Cir. 1986) and *Lashley v. Sec'y of Health & Human Servs.,* 708 F.2d 1048, 1051-1052 (6th Cir. 1983).  An ALJ has a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," when the claimant is unrepresented at the hearing.  *Lashley,* 708 F.2d at 1052-1053.  The ALJ must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.*  No bright line test exists for determining when the ALJ has assumed the role of counsel or failed to fully develop the record.  *Id.*  The Sixth Circuit has cautioned that the

determination "of whether an ALJ has failed fully to develop the record in derogation of this heightened responsibility must be determined on a case-by-case basis, and that it is clear that a claimant may waive his right to counsel." *Nabours*, 50 Fed.Appx. at \*\*3, citing *Duncan*, 801 F.2d at 856 and *Lashley*, 708 F.2d at 1052.

Here, no express waiver of representation was made on the record. Nevertheless, this Court finds this to be harmless error if it constitutes error at all. A lack of representation at a hearing does not alone constitute grounds for an automatic reversal. *Ortiz, ex rel. S.O. v. Comm'r of Soc. Sec.*, No. 1:09CV0700, 2010 WL 2927179, at \*7 (N.D. Ohio July 6, 2010), citing *Duncan*, 801 F.2d at 855, citing *Holden v. Califano*, 641 F.2d 405, 408 (6th Cir. 1981)("[a]lthough a court scrutinizes with care the administrative record when a claimant appears without counsel, the mere fact that a claimant was unrepresented is not, alone, grounds for an automatic reversal."). Thus, Plaintiff's lack of representation at the hearing does not automatically require reversal of the instant case.

Moreover, it has been noted that even if a waiver of a right to counsel had not been knowingly and voluntarily made, this could nevertheless constitute harmless error if an adequate record were made. *Ortiz, ex rel. S.O.* 2010 WL 2927179, at \*7, fn 9. Plaintiff, now represented by counsel, does not raise his lack of representation as cause for reversal of his case. However, he does briefly mention in his very last assertion of error that the ALJ failed to fulfill his special duty of ensuring an adequate record as to the VE testimony since he was not represented at the hearing. ECF Dkt. #15 at 14.

Thus, the Court must review whether the ALJ made an adequate record in this case. The ALJ did note at the hearing and in his decision that Plaintiff at one time had counsel on this case. Tr. at 16, 41-420. The ALJ further ensured that Plaintiff had received notice of the hearing, which included an explanation of the right to have representation at the hearing. Tr. at 49-50, 421. The ALJ also conducted a thorough review of Plaintiff's background, work history, and relevant information regarding his physical and mental impairments at the hearing.

Plaintiff, through counsel, raises a number of errors that the ALJ allegedly committed. The Court will review those allegations with the rest of the record in order to determine if the record was adequately developed. The Court takes Plaintiff's assertions of error out of order and addresses

-8-

them in the chronological order of the required sequential steps for evaluating entitlement to DIB and SSI.

### A. TREATING PHYSICIAN'S OPINION

Plaintiff first asserts that the ALJ committed error by claiming to have adopted the opinions of Dr. Haar, his treating psychiatrist, in his decision, but not accounting for many of Dr. Haar's limitations in his mental residual functional capacity determination ("MRFCD"). ECF Dkt. #15 at 6. Plaintiff refers to Dr. Haar's completion of the Ohio Department of Job and Family Services ("ODJFS") mental functional capacity assessment ("MFCA") in which he checked boxes assessing Plaintiff's understanding and memory, sustained concentration and persistence, social interaction, and adaption. Tr. at 341-342. Dr. Haar indicated that Plaintiff was "not significantly limited" in his abilities to: remember locations and work-like procedures; understand, remember and execute very short and simple instructions; and to maintain attention and concentration for extended periods. *Id.* at 341. Dr. Haar further assessed that Plaintiff was "moderately limited" in all other areas, including: understanding, remembering and executing detailed instructions; performing activities within a schedule, maintaining regular attendance, and being punctual; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being distracted by them; making simple work-related decisions; completing a normal workday or workweek without interruption from psychologically based symptoms and to perform at a consistence pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintaining appropriate behavior and hygiene; responding appropriately to changes in the work setting; being aware of normal hazards and taking appropriate precautions; traveling in unfamiliar places or using public transportation; and setting realistic goals or making plans independently of others. *Id.*

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p,

-9-

1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96.2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore "'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.'" *Wilson*, 378 F.3d at 544, quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).

   Plaintiff contends that despite the ALJ's adoption of Dr. Haar's opinion, Dr. Haar opined that he was much more limited than the ALJ found and the ALJ gave no reasons for rejecting or attributing less than controlling weight to Dr. Haar's opinion. ECF Dkt. #15 at 8. Plaintiff asserts that the phrase "moderately limited," which is undefined on the ODJFS MFCA form that Dr. Haar completed, means "significantly limited" because it is placed between "not significantly limited" and "markedly limited" on the form. *Id.* at 8-9. Plaintiff identifies the various areas where Dr. Haar found him "moderately limited" in order to show that the ALJ did not include these limitations in his MRFCD.

   Plaintiff first specifically asserts that the ALJ failed to include a limitation on public contact in his MRFCD for Plaintiff, despite the fact that Dr. Haar found Plaintiff's ability to interact with the public to be "moderately limited." ECF Dkt. #15 at 9. Looking only at that part of the ALJ's decision containing the MRFCD, Plaintiff is correct. In the bolded portion of the decision setting forth the MRFCD, the ALJ merely finds that Plaintiff "can deal with co-workers and supervisors only at a superficial level." Tr. at 27. However, a review of the rest of the ALJ's decision and the

hypothetical that the ALJ presented to the VE shows that the ALJ included superficial contact with *others* in advancing a MRFCD for Plaintiff. The ALJ cited Dr. Haar's findings from the MRFA, including the moderate limitation in interacting appropriately with the public. *Id*. at 24. The ALJ thereafter adopted Dr. Haar's opinion as consistent with the medical evidence. *Id*. He further noted that Dr. Haar did not opine that Plaintiff was markedly limited in his ability to deal with coworkers and supervisors. *Id*. at 30. The ALJ concluded in this section of his decision that "[t]he claimant is capable of superficial contact with others." *Id.* The ALJ also presented a hypothetical person to the VE who "could have superficial contact with others." *Id*. at 453.

Thus, while the ALJ failed to include superficial contact with the public in the bolded portion of the MRFCD portion of his decision, the Court finds that this was merely an oversight and does not constitute reason for remand of this case.

The Court also rejects Plaintiff's contention that the ALJ was required to incorporate all of Dr. Haar's other "moderate limitations" into his MRFCD for Plaintiff. It is the ALJ who ultimately determines a claimant's RFC. *See* 20 C.F.R. 404.1546(c), 416.946(c) ("The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician"). Plaintiff cites to no rule or regulation requiring the ALJ to incorporate verbatim each and every finding of the treating physician. *See Earls v. Comm'r of Soc. Sec*., No. 1:09CV1465, 2011 WL 3652435, at *5 (N.D. Ohio Aug. 19, 2011)(while ALJ gave substantial weight to state agency psychologist evaluation who found claimant moderately limited in numerous areas, ALJ was not required to incorporate each limitation verbatim in his RFC).

Moreover, despite Dr. Haar's failure to define "moderately limited," the ALJ provided a reasonable explanation for his interpretation of Dr. Haar's opinion and how it was consistent with his MRFCD for Plaintiff. The ALJ indicated that he adopted Dr. Haar's opinion, explaining that Dr. Haar assigned Plaintiff a global assessment of functioning score of 65, which indicates mild symptoms, and Dr. Haar had not indicated marked limitations in Plaintiff's abilities to deal with co-workers and supervisors. Tr. at 29-30. Dr. Haar had indicated in his MRFCA that Plaintiff was employable despite the moderate limitations and he concluded that Plaintiff's limitations were expected to last for only a period of thirty days to nine months. *Id*. at 342. The ALJ also noted that

-11-

Dr. Haar had assessed that Plaintiff could perform simple one-to-two step instructional work, which was consistent with the ALJ's MRFCD. *Id*. The Court finds that the ALJ's MRFCD adequately addressed Dr. Haar's moderate limitations for Plaintiff in the areas of understanding and memory and sustained concentration and persistence by limiting him to unskilled, simple, one-to-two step instructional light work where the work tasks must be demonstrated rather than given by written instructions with no strict deadlines or production quotas. *Compare id*. at 27 with Tr. at 341. The ALJ's MRFCD also reasonably addressed Dr. Haar's moderate limitations in Plaintiff's ability to socially interact by limiting Plaintiff to only superficial contact with others. *Id*. Finally, the ALJ's MRFCD reasonably addressed Dr. Haar's moderate limitations in Plaintiff's ability to adapt to changes in the workplace by limiting the work to infrequent changes in the workplace. *Id*.

### B. STATE AGENCY PHYSICIAN OPINIONS

Plaintiff also asserts error in the ALJ's evaluation of and reliance upon the opinions of state agency examining psychologist Dr. Evans, and the opinions of state agency non-examining psychologists Drs. Stinson and Chambly. ECF Dkt. #15 at 11-13.

It is true that opinions from agency medical sources are considered opinion evidence. 20 C.F.R. § 416.927(f). The regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 416.927(f)(2)(ii). More weight is generally placed on the opinions of examining medical sources than on those of non-examining medical sources. *See* 20 C.F.R. § 416.927(d)(1). However, the opinions of non-examining state agency medical consultants can, under some circumstances, be given significant weight. *Hart v. Astrue*, 2009 WL 2485968, at *8 (S.D. Ohio Aug. 5, 2009). This occurs because nonexamining sources are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." SSR 96-6p, 1996 WL 374180. Thus, the ALJ weighs the opinions of agency examining physicians and agency reviewing physicians under the same factors as treating physicians

-12-

including weighing the supportability and consistency of the opinions, and the specialization of the physician. *See* 20 C.F.R. § 416.972(d), (f).

However, the Sixth Circuit Court of Appeals has held that the regulation requiring an ALJ to give good reasons for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of several examining physicians' opinions over others. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, at **10 (6th Cir. Feb. 9, 2006), unpublished. The *Kornecky* Court found that:

> While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:
>
>> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Id.*

### 1. **DR. EVANS**

Dr. Evans, the state agency examining psychologist, had examined Plaintiff once and concluded that Plaintiff had adequate ability to understand and follow simple, repetitive instructions, to concentrate and pay attention, and to adapt behaviorally. Tr. at 246-247. Dr. Evans further opined that Plaintiff had moderate limitations in withstanding stress and pressure and in relating to others. *Id.* at 246. Dr. Evans did not offer diagnoses as to Plaintiff's mental impairments, explaining that based upon his interview, Plaintiff did not suffer from any Axis I or Axis II psychiatric condition, and any type of psychiatric disorder was deferred. *Id.* at 246-247. Dr. Evans noted inconsistent statements made by Plaintiff, such as Plaintiff indicating past suicidal ideations and two attempts, but reporting that he had never been depressed. *Id.* at 246. He also noted Plaintiff's statement that he had not thought about suicide for a very long time, but then reported that he attempted to kill himself five months prior. *Id.*

The ALJ indicated that he gave significant weight to Dr. Evans' opinion. Tr. at 30. The ALJ explained that Dr. Evans completed a function-by-function MRFC assessment which found that Plaintiff had no marked psychiatric impairment. *Id.*

Plaintiff contends that the ALJ committed error as he failed to restrict Plaintiff to "repetitive" tasks as Dr. Evans had opined. ECF Dkt. #15 at 13. Plaintiff points out that the ALJ included the "repetitive" tasks limitation to the VE at the hearing when presenting the hypothetical person, but then failed to include this limitation in his MRFCD for Plaintiff. *Id.* However, the Sixth Circuit has held that a limitation to unskilled work is commensurate with a limitation to "simple, repetitive tasks." *Sandlin v. Astrue,* No. 07-160-DLB, 2008 WL 4402205, at *6 (Sept., 24, 2008), unpublished, quoting *Allison v. Apfel*, No. 99-4040, 229 F.3d 1150 (Table), 2000 WL 1276950, at *4 (6th Cir. Aug. 30, 2000), unpublished, citing 20 C.F.R. § 404.1568(a). Thus, the ALJ's failure to expressly include this limitation in his MRFCD for Plaintiff is not fatal as he limited Plaintiff to unskilled work, both in his decision and in his hypothetical person to the VE. Tr. at 33, 454.

Plaintiff also complains that the ALJ's MRFCD and hypothetical question did not address Dr. Evans' opinion that he had a moderate limitation in dealing with the public. ECF Dkt. #15 at 13. As discussed in the preceding section, the Court finds that the ALJ committed an oversight in omitting the inclusion of superficial contact to include the public when he determined that Plaintiff was limited to superficial contact with co-workers and supervisors and indicated both in his hypothetical question to the VE and in another part of decision that Plaintiff was limited to superficial contact with *others*. *See supra,* Tr. at 30, 453.

Finally, Plaintiff asserts that substantial evidence does not support the weight that the ALJ attributed to the opinion of Dr. Evans because Dr. Evans' opinion did not reflect the ALJ's Step Two finding that Plaintiff had five severe mental impairments as Dr. Evans did not even diagnose Plaintiff with a mental impairment. ECF Dkt. #15 at 13. The Court finds no merit to this assertion. Plaintiff provides no support for his assertion that the ALJ's Step Two determination in the sequential evaluation process impacts his ability to accept Dr. Evans' MRFC findings merely because Dr. Evans did not diagnose Plaintiff with a mental disorder upon his one-time examination. The ALJ based his Step Two findings upon evidence from sources other than Dr. Evans' evaluation, including other medical sources statements from before Dr. Evan's evaluation and after, as well as from Plaintiff's own statements and medical history. The ALJ considered the record as a whole in determining the severe impairments at Step Two.

## **2**.     **DRS. STINSON AND CHAMBLY**

Plaintiff further argues that substantial evidence does not support the ALJ's evaluation of the opinions of non-examining psychologists Stinson and Chambly. ECF Dkt. #18 at 11. In July 2004, Dr. Chambly affirmed Dr. Stinson's functional capacity assessment opining that with Plaintiff's mental impairments, he had minimal limitations in daily living activities and had adequate attention, concentration, persistence and pace for a normal workday and workweek. Tr. at 266. Dr. Stinson further opined that Plaintiff could: understand, remember and follow simple and moderately complex tasks; work at a job routine that had only a couple of changes, but not frequent or constant changes; interact at least superficially with a few others, but not a lot and not regularly with the general public; adapt to routine changes; and needed instructions explained to him carefully or even repeatedly and would not do well with written instructions. *Id.* at 266-267.

In his decision, the ALJ indicated that he had considered the opinions of state agency psychologists in accord with 20 C.F.R. § 416.927(f) and Social Security Ruling 96-6p. Tr. at 30. He determined that the assessments were consistent with and well supported by the objective medical evidence and he accepted them as an accurate representation of Plaintiff's status. *Id.*

Plaintiff contends that despite his acceptance of the opinions of Drs. Stinson and Chambly, the ALJ did not include all of their limitations in his MRFCD for Plaintiff. ECF Dkt. #15 at 12. Specifically, Plaintiff cites to Drs. Stinson and Chambly's opinions that Plaintiff could not have regular contact with the public, could relate superficially to only a few other people, and that Plaintiff may need things explained to him carefully or even repeatedly initially. *Id.*

The Court finds that the ALJ did account for these findings in his MRFCD for Plaintiff. As explained in the preceding section, the Court finds that the ALJ's omission of superficial contact with the public in the actual RFC section of his decision was merely an oversight as he presented a limitation of superficial contact with *others* to the VE and included this same limitation in another part of his decision. Tr. at 30, 453. The superficial contact limitation also covers Drs. Stinson and Chambly's limitation that Plaintiff could relate to only a few other people. Moreover, the ALJ limited Plaintiff to jobs requiring regular expectations and a physical demonstration of the job as opposed to written instructions. *Id.* at 27, 453. Thus, the ALJ adequately accounted for the

limitations of Drs. Stinson and Chambly.

### C. USE OF A CANE

Plaintiff also asserts that the ALJ erroneously evaluated his use of cane, finding that he was not credible about his use of the cane. ECF Dkt. #15 at 13. Plaintiff contends that substantial evidence does not support the ALJ's finding as to his credibility on this issue because the ALJ materially misstated his testimony. *Id*.

Defendant fails to address this specific assertion in his brief on the merits, but does advance a generic credibility analysis and assert that the ALJ's credibility assessment addressed the proper factors and was supported by the evidence. ECF Dkt. #19 at 12.

In his decision, the ALJ found Plaintiff's credibility compromised because he told the ALJ at the hearing that he used a cane to support his back and a doctor had told him to use it. Tr. at 31. The ALJ did misstate Plaintiff's testimony as to the use of a cane. The ALJ asked Plaintiff if he used an assistive device and Plaintiff testified that he did use a cane occasionally, "but very seldom because the doctor told me it wasn't, I shouldn't do it or depend on it." Tr. at 423. It does not appear that Plaintiff testified that a doctor had prescribed the cane.

However, the Court finds that this error was harmless as it appears to be only a minor factor that the ALJ relied upon in assessing Plaintiff's credibility. The ALJ cited to the correct credibility analysis regulations and SSRs and thoroughly reviewed the evidence in the file. The ALJ cited inconsistencies in Plaintiff's testimony regarding his daily living activities, very few objective medical records which showed only mild physical impairment, Plaintiff's past history of minimal work activity, and the relatively limited and conservative treatment that he received for his impairments. Accordingly, substantial evidence supports the ALJ's overall credibility analysis and the ALJ's misstatement of Plaintiff's testimony on the use of a cane constitutes harmless error.

### D. VOCATIONAL EXPERT

Plaintiff presents a number of issues relating to the ALJ's presentation of a hypothetical person to the VE and the VE's testimony. ECF Dkt. #15 at 5, 10, 14, 16.

Plaintiff first asserts that the ALJ's hypothetical question to the VE was less restrictive than the RFC that the ALJ used in his decision. ECF Dkt. #15 at 5. He contends that the ALJ told the

VE to assume ME Nusbaum's opinions, which included an opinion that Plaintiff could perform *more than* light work. *Id.*, citing Tr. at 27, 449-450, 453. However, Plaintiff argues that the ALJ actually determined that he could perform only a *limited range of light work*, which was not presented to the VE. *Id.* Plaintiff thus concludes that the ALJ's hypothetical person to the VE was inaccurate and he could therefore not rely on the VE's testimony to meet the Step Five analysis. *Id.*

ME Nusbaum did opine that Plaintiff could lift up to thirty-five pounds occasionally and twenty-five pounds frequently, with no limitations on sitting, standing or walking, and no environmental or postural limitations. Tr. at 449. In the hypothetical question presented to the VE, the ALJ asked the VE to presume a person with Dr. Nusbaum's limitations, and additional mental limitations. *Id*. at 453. The VE presented occupations that such a person could perform. *Id*. at 454.

In his decision, the ALJ found that Plaintiff could lift up to twenty pounds occasionally and ten pounds frequently, thus finding that Plaintiff was more restricted than that opined by the ME. Tr. at 27. However, an ALJ is not bound by the RFC of the ME as the ALJ is the one who ultimately determines a claimant's RFC. 20 C.F.R. §§404.1520(g), 416.920(g). Moreover, the fact that the ALJ found a more restrictive RFC than that opined by the ME does not negate or impact the VE's testimony, since the VE testified that the jobs that he presented to the ALJ were at the light exertional level. The light exertional level is the level at which the ALJ found Plaintiff to be limited.

Plaintiff also complains that the ALJ should have asked the VE to identify jobs consistent with Dr. Haar's opinions. ECF Dkt. #15 at 10. The Court finds that the ALJ did in fact present a hypothetical person to the VE that was consistent with Dr. Haar's opinions. As explained above, the ALJ accepted Dr. Haar's opinions as to Plaintiff's limitations and reasonably interpreted that Plaintiff's "moderate" limitations resulted in a MRFC that included simple, one-to-two step instructional work with no strict deadlines, no production quotas, demonstration of work tasks as opposed to written instructions, no frequent changes in the workplace and only superficial contact with the public, supervisors and co-workers. *See supra*. Accordingly, the Court finds no merit to this assertion.

-17-

Plaintiff further asserts that the ALJ failed to develop an adequate record with regard to the VE's testimony as he was required to do because Plaintiff was not represented at the hearing. ECF Dkt. #15 at 15. In support of this assertion, Plaintiff reiterates his argument that the ALJ presented an inaccurate hypothetical to the VE because it failed to include the limitations opined by Dr. Haar, Dr. Evans, and Drs. Stinson and Chambly, all opinions that the ALJ purported to accept. *Id.* As explained above, the Court finds no merit to Plaintiff's assertion that the ALJ failed to include the limitations of these medical professionals in his MRFCD. Thus, the Court finds that the hypothetical question presented to the VE by the ALJ was accurate and the ALJ fully and fairly developed the hypothetical question and the VE's testimony resulting from this hypothetical question.

Plaintiff also contends that the ALJ failed to ask the VE to provide the Dictionary of Occupational Title ("DOT") Numbers to identify specific DOT jobs that he had listed. ECF Dkt. #15 at 15. Plaintiff reasons that if these numbers were provided, he would have been able to compare the requirements of those jobs with the ALJ's hypothetical question and the other evidence in the record. *Id.*

The Court finds no merit to this assertion. Plaintiff provides no case law support for this contention and case law to the contrary actually finds that a VE is not required to provide reference numbers for the jobs that he identifies. *Creque v. Astrue*, Case No. 4:10CV1528, 2011 WL 4054859, at *7 (N.D. Ohio Aug. 18, 2011), report and recommendation adopted 2011 WL 4043786 (N.D. Ohio Sept. 12, 2011), citing *Holland v. Comm'r of Soc. Sec.*, No. 1:09–CV–240, 2010 WL 3672338, at *18 (S.D.Ohio Mar.1, 2010), report and recommendation adopted 2010 WL 3703293 (S.D.Ohio Sept.16, 2010); *Rich v. Comm'r of Soc. Sec.*, No. 07–13490, 2008 WL 4450285, at *5 (E.D.Mich. Sept.29, 2008) ("The regulations do not require identification of specific DOT numbers.").

Finally, Plaintiff contends that the ALJ erred in calculating the number of jobs available at the national level because he misapplied the information provided by the VE in determining this number. ECF Dkt. #15 at 16. Plaintiff asserts that after the VE provided data as to local and state jobs available for the hypothetical person presented by the ALJ, the ALJ asked the VE for the number of jobs available at the national level, but the VE stated that he did not have the data. *Id.*

The VE did state that the national incidence of jobs would be "approximately 100 times" the local job availability level, which he calculated as a total of 1,500 jobs across three different job titles. Tr. at 455. In his decision, the ALJ multiplied the VE's state job-incidence numbers by 100 to obtain the national job level, rather than multiplying the local job-incidence numbers. Tr. at 33. Thus, the ALJ found that 650,000 national jobs were available for the three jobs, rather than 150,000 jobs. *Id.*

The Court finds that even if the ALJ used the wrong number to multiply by 100 in determining the national incidence level, this constitutes harmless error. Plaintiff fails to contend or provide support for finding that the availability of 150,000 jobs at the national level is not a significant number of jobs in this case. In *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988), the Sixth Circuit Court of Appeals found that there is not "one special number which is to be the boundary between a 'significant number' and an insignificant number of jobs." The Sixth Circuit identified criteria that should be considered in determining whether work exists in significant numbers, as including "the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work..." *Id*. The Court held that "[t]he decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.*

The Court notes that Plaintiff argues only that the ALJ grossly overstated the national jobs number. He fails to assert that the local and regional numbers calculated by the VE and relied upon by the ALJ are insignificant. Nor does Plaintiff argue that the 150,000 jobs in the national economy, the number that he alleges the ALJ should have used, does not constitute a significant number of jobs.

Nevertheless, reviewing the factors identified by the Sixth Circuit, and considering the facts of this case, the Court finds that the local, state and national numbers identified by the VE represents a significant number. The ALJ reviewed the relevant factors identified by the Sixth Circuit as he addressed inconsistencies in statements made by Plaintiff as to his daily living activities, the reliability of the VE, and the type, nature and availability of the work available. The VE in this case

indicated that 1,500 local jobs and 6,500 state-wide jobs existed over the three job categories. Tr. at 455. The Sixth Circuit found in *Hall* that the number of 1,350 - 1,800 jobs existing in the region where the claimant lived to be a significant number. *Hall,* 837 F.2d at 275. The Sixth Circuit has found similarly in other cases. *See Kappesser v. Commissioner of Social Security*, No. 95-5387, 1995 WL 631430, at *4 (6th Cir. Oct. 26, 1995), unpublished (422 jobs locally, 1,149 state-wide and 101,212 nationally constituted a significant number of jobs); *Taylor v. Chater*, No. 95-5157, 1995 WL 592031, at *1 (6th Cir. Oct. 5, 1995), unpublished (640 jobs locally constituted a significant number of jobs). Moreover, courts have found that numbers near or below 150,000 jobs nationally, the number that Plaintiff believes the ALJ should have found, also constitute a significant number of jobs. *Bishop v. Shalala*, No. 94-5375, 1995 WL 490126, at *2-3 (6th Cir. Aug. 15, 1995), unpublished (6,100 jobs existing in national economy constituted a significant number of jobs); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir.1987) (174 jobs locally, 1,600 statewide, and 80,000 nationally constituted a significant number of jobs); *Rosic v. Comm'r of Soc. Sec.*, No. 1:09CV1380, 2010 WL 3292964 (Aug. 19, 2010, at *11), unpublished (800 jobs locally and 120,000 jobs nationally represented significant number of jobs), citing *Girt v. Astrue*, No. 5:09CV1218, 2010 WL 908663, at *4 (N.D. Ohio, Mar. 12, 2010), unpublished (finding that 600 jobs state-wide and 35,000 jobs nationally constituted significant number of jobs and collecting cases.).

## **VI.** **CONCLUSION**

For the foregoing reasons, the AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice.

IT IS SO ORDERED.

DATE: October 12, 2011            */s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE